In re David Ross STOUT, Jr., and Ronda Marie Stout, Debtors.

Ronda Marie Stout and David Ross Stout, Jr., Plaintiffs,

v.

United States Department of Education; Missouri Higher Education Loan Authority; and Kala Stroup, Commissioner, Missouri Coordinating Board for Higher Education, Defendants.

Bankruptcy No. 98–50164–ABF–7. Adversary No. 98–5020–SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

March 8, 1999.

Jere L. Loyd, St. Joseph, MO, for plaintiffs.

Judith M. Strong, Kansas City, MO, Douglas E. Nelson, Jefferson City, MO, for defendants.

## MEMORANDUM OPINION

JERRY W. VENTERS, Bankruptcy Judge.

The Debtors, David Ross Stout, Jr. and Ronda Marie Stout, filed a First Amended Complaint to determine the dischargeability of their student loans, pursuant to 11 U.S.C. § 523(a)(8)(A) and (B). In Count I, Ronda Stout seeks a discharge of a student loan held by the United States Department of Education. In Count II, David Stout seeks a discharge of a student loan made by the Missouri Higher Education Loan Authority ("MoHELA") and guaranteed by the Missouri Coordinating Board for Higher Education. This matter comes before the Court at this time on a Motion to Dismiss filed by defendant Kala Stroup, Commissioner of the Coordinating Board for Higher Education ("Defendant"), on the basis that the Complaint is barred by the Eleventh Amendment to the United States Constitution. For the reasons stated below, the Motion to Dismiss as to Count II of the First Amended Complaint will be granted. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## DISCUSSION

In Count II of the Debtors' First Amended Complaint, David Stout pleads that he obtained a student loan from MoHELA and that the loan was guaranteed by the Missouri Coordinating Board for Higher Education. He alleges that the student loan first became due in approximately November 1994 and that excepting the debt from discharge would impose an undue hardship on him and his dependents. David Stout therefore requested that the student loan be discharged pursuant to the provisions of 11 U.S.C. § 523(a)(8)(B).[1]

---

1. In 1998, Congress amended § 523 to remove subsection (A), which provided for the discharge

■ Unlike some of the exceptions to discharge in § 523, the student loan discharge provision in former § 523(a)(8)(B) is not self-effectuating. Rather, it requires the debtor to bring an adversary proceeding to determine whether the debt is, in fact, dischargeable under provisions of the Bankruptcy Code. *In re Key,* 128 B.R. 742, 743 (Bankr.S.D.Ohio 1991).

Although it is not explicitly stated in the Complaint, the Debtors have apparently brought their Complaint against Kala Stroup in her official capacity as the Commissioner of Higher Education for the State of Missouri. Defendant Stroup argues in her Motion to Dismiss that the suit filed by the Debtors is actually a suit against the State of Missouri and is therefore barred on grounds of sovereign immunity, as extended to the States through the Eleventh Amendment to the Constitution.[2]

■ The Eleventh Amendment has been interpreted to prohibit suits in Federal court which are nominally against state officials in their official (as opposed to personal) capacities, where the real party in interest is the state. *Ford Motor Co. v. Dept. of Treasury of State of Indiana,* 323 U.S. 459, 463–64, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The state will be considered the real party in interest when "the decision rendered would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the State to act or refrain from acting." *Lilley v. State of Missouri,* 920 F.Supp. 1035, 1040 (E.D.Mo.1996) (*quoting Pennhurst State School and Hospital v. Halderman,* 465 U.S.

89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). A proceeding to determine the dischargeability of a debt owed to the state could result in both a restraint on the actions of the state (i.e., by prohibiting it from collecting on a debt) and a drain on the public treasury (i.e., by not receiving payment of a debt). Therefore, it is clear that a suit brought in Federal Court against a state official to determine the dischargeability of a debt owed to the state is in actuality a suit against the state. That being the case, the suit is barred by the Eleventh Amendment.[3]

The argument that the Bankruptcy Code confers jurisdiction on the Bankruptcy Courts to exercise jurisdiction over the states in dischargeability proceedings has previously been addressed, and rejected, by this Bankruptcy Court based on the Supreme Court's holding in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996). Most recently, Chief Judge Frank W. Koger, in *Holland v. U.S. Department of Education (In re Holland),* 230 B.R. 387 (Bankr.W.D.Mo.1999), ruled that the debtors could not pursue their student loan dischargeability action against the State of Missouri in light of the ruling in *Seminole.* Likewise, Judge Arthur B. Federman of this Court dismissed a similar action against Missouri Western State College. *In re Schmitt,* 220 B.R. 68 (Bankr.W.D.Mo. 1998). The Bankruptcy Court's rulings in *Schmitt* and *Holland* follow and are in keeping with the District Court's ruling in *In re Rose,* 227 B.R. 518, 520 (W.D.Mo.1998). *See also, In re Perkins,* 228 B.R. 431 (Bankr.

of student loans that first became due before more than 7 years before the date of the filing of the bankruptcy petition. Pub.L. No. 105–244, 112 Stat. 1581. Thus, there no longer is a subsection (B) as pleaded by the Debtors. Nevertheless, the Debtors have requested that the student loan of David Stout be discharged on the grounds of undue hardship, as still provided by the statute.

2. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State.

For over a century, the Supreme Court has reaffirmed that federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 53, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996).

3. "When a suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake." *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997).

E.D.Mo.1998), and *In re Snyder,* 228 B.R. 712 (Bankr.D.Neb.1998)

Stated concisely, the Supreme Court held in *Seminole* that the Eleventh Amendment prevents Congress, acting pursuant to its Article I powers, from subjecting states to suits brought by private parties in Federal court unless the states expressly consent to such suits.[4]

■ Despite the previous rulings of this Court, the Debtors argue that they should be permitted to maintain their suit against Defendant Stroup under the *Young* doctrine, enunciated by the Supreme Court in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Debtors argue that prospective injunctive relief, not retrospective monetary relief, is effectively being sought, because the Debtors are seeking to prohibit the State from collecting the balance owed on the State-backed student loan made to David Stout.

■ However, the *Young* doctrine is not a blanket authorization for suits against state officials to obtain injunctive relief. The *Young* doctrine states that "[a] Federal Court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of Federal law." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). In other words, it may only be utilized in those rare instances when it is necessary "to end a continuing violation of Federal law" to assure the supremacy of that law. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985). Therefore, to invoke the *Young* doctrine in the first instance, there must be a continuing violation of federal law. Before there could be a continuing violation of federal law in the circumstances here, there would first have to be a determination that Debtor David Stout's student loan is discharged. In turn, to obtain a determination that the student loan debt is discharged would require a suit against the State, which is prohibited by the Eleventh Amendment absent the consent of the State to suit. Such consent has not been given here.

Inasmuch as the State is not presently attempting to collect the balance owed on David Stout's student loan, there is no action to enjoin, even if the *Young* doctrine could be applied. And, since the student loan debt has not been found to be discharged, it would not be a violation of federal law for the State to seek to collect the balance owed, because the Stouts have received a discharge in their Chapter 7 bankruptcy proceedings and the automatic stay of 11 U.S.C. § 362 has terminated.

Both Judges Koger and Federman have examined the question of whether the *Young* doctrine would be available to debtors, such as the Stouts, to obtain a discharge of their student loan debts. In dicta, Judge Federman first opined that, in order to uphold the Congressional intent expressed in the Bankruptcy Code to grant debtors a fresh start, actions under *Ex parte Young* against state officials to obtain a determination of dischargeability might be appropriate. *In re Schmitt,* 220 B.R. at 74. However, upon direct consideration of the *Young* doctrine to this issue, in *Holland,* Judge Koger held that *Young* was inapplicable because the debtors had not alleged an ongoing violation of federal law and there had been no determination that the student loan debt at issue had been discharged.

Consistent with the holding in *Holland,* I find that *Ex parte Young* is inapplicable in this case. No action is being taken by the State that constitutes a continuing violation of federal law. Until there is a determination that David Stout's student loan is discharged, there will be no violation of federal law should the State undertake collection efforts. Unfortunately, because of the strictures of the Eleventh Amendment and the Supreme Court's ruling in *Seminole,* this

---

**4.** *See, In re Schmitt,* 220 B.R. 68, 70–71 (Bankr. W.D.Mo.1998) (discussing in detail the effect of *Seminole* on 11 U.S.C. § 106 of the Bankruptcy Code, which had previously been interpreted as waiving sovereign immunity in certain circumstances). The Supreme Court has consistently held that Congress' intent to abrogate the States' immunity from suit must be obvious from "a clear legislative statement." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 786, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991).

Court cannot entertain the Debtors' Complaint against Defendant Stroup or Defendant MoHELA.

This holding is in keeping with the Supreme Court's admonition in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), in which the Court cautioned:

> "To interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe*, that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."

*Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270, 117 S.Ct. at 2034, 138 L.Ed.2d 438 (1997)

Like the other courts that have considered this issue, I appreciate the fact that this ruling places the debtors in a very difficult position. Because of the State's Eleventh Amendment sovereign immunity, the debtors cannot resort to the federal bankruptcy courts to obtain a determination of the dischargeability of their student loan debts. The bankruptcy courts, dealing as they do on a day-to-day basis with all kinds of dischargeability issues, are in the best position to decide these questions, particularly when these questions are presented in a bankruptcy proceeding that is already before the court. Unfortunately, perhaps all the debtors can do is wait until the State seeks to collect the student loan balances and then seek relief in the state courts, thereby prolonging for months and perhaps years the uncertainty of whether they will have to pay the debts owed. Or, alternatively, the debtors may initiate dischargeability actions in the state courts, which have concurrent jurisdiction to determine such issues, though at some substantial additional expense and delay. Neither alternative is appealing.

In a dissent in *Seminole*, Justice Stevens noted the broad reach of the Court's language and pointed out that it could have a far-reaching impact on many other kinds of federal cases. He said:

> "The importance of the majority's decision ... cannot be overstated. The majority's opinion ... prevents Congress from providing a federal forum for a broad range of actions against States, from those sounding in copyright and patent law, to those concerning bankruptcy, environmental law, and the regulation of our vast national economy."

*Seminole*, 517 U.S. at 77, 116 S.Ct. 1114.

This case and the other cases cited herein demonstrate the accuracy of Justice Stevens' prediction. Regretfully, the impact may hit hardest those who are least able to deal effectively with the consequences.

## CONCLUSION

For the reasons stated hereinabove, the Motion to Dismiss filed by Defendant Stroup is GRANTED, and Count II of the Debtors' Complaint is hereby dismissed as to Defendant Stroup and Defendant Missouri Higher Education Loan Authority. Trial of Count I, in which the U.S. Department of Education is the lone defendant, will be held at a later date.