MAURICE F. DECKER *et al.*, Plaintiffs-Appellants, *v.* UNIVERSITY CIVIL SERVICE SYSTEM MERIT BOARD OF THE UNIVERSITY CIVIL SERVICE SYSTEM *et al.*, Defendants-Appellees.

Fourth District    No. 15802

Opinion filed June 2, 1980.

J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, for appellants.

Richard O. Erdmann, of Follmer, West & Erdmann, of Champaign, James J. Costello, of University Civil Service System, of Urbana, and Edward J. Karlin and Robert H. Joyce, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs, who are nonacademic employees of the University of Illinois at Urbana, brought suit in the circuit court of Champaign County seeking to compel the defendants to pay to them the prevailing wage rates in that area. Plaintiffs' claim is based on legislation entitled "An Act in relation to the rate of pay for State employees who are not subject to the 'Personnel Code'. Approved September 25, 1975, P.A. 79-1091, eff. October 1, 1975." Ill. Rev. Stat. 1977, ch. 127, par. 391.

The complaint was in four counts. Count I sought *mandamus*, count II asked for declaratory judgment, count III repeated the allegations of count I and asked for certification as a class action, and count IV repeated the allegations of count II and asked for certification as a class action.

The defendants are the University Civil Service System Merit Board created under section 36b of "An Act to create the State Universities Civil Service System" (Ill. Rev. Stat. 1977, ch. 24½, par. 38b1), and Donald Ward, university director of personnel services at the University of Illinois.

After appropriate responsive pleadings were filed by the defendants, the trial court held a hearing and dismissed the complaint upon findings that (1) it was not a proper case for a class action, and (2) that the "Act in relation to the rate of pay * * *," referred to above did not supersede nor amend by implication the provisions of the University Civil Service System Act. This appeal followed. Plaintiffs' two issues on appeal are that the trial court committed errors of law in making the findings recited above.

The factual allegations of the complaint which were the same in each of the four counts may be summarized as follows: that the University of Illinois is a land-grant college organized under the constitution and laws of the State of Illinois and that plaintiffs are employed as nonacademic employees thereof at the Champaign-Urbana campus under the University Civil Service System; that the Merit Board has the power under its statute to classify jobs and set conditions of employment and compensation; that the defendant Ward is responsible for making

recommendations to the Merit Board concerning classifications, conditions and compensation of employment; that nonacademic employees of the university are exempt from the provisions of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b101 *et seq.*) by reason of being under the University Civil Service System; that the aforementioned act in relation to pay for employees not subject to the Personnel Code became effective October 1, 1975; that plaintiffs' classifications, and wage rates, have been treated as nonprevailing; that plaintiffs have demanded the prevailing rate, but defendants have refused, asserting that the act does not apply to the university; that the act does apply to the university its nonacademic employees and the defendants.

As indicated above, in counts I and II, plaintiffs sued on their own behalf, asking for a writ of *mandamus* and for declaratory judgment against the defendants requiring them to determine that plaintiffs are entitled to the prevailing wage. In counts III and IV plaintiffs asked for the same relief and further asked to be certified as representatives of a class of all nonacademic employees similarly situated.

The first issue to which we will address ourselves is the relationship of the statutes. The act under which plaintiffs claim their rights reads as follows (herein the Act):

"Whenever any State officer, agency or authority, whether funded by State taxes or otherwise, employs an individual in a capacity or position of such a character as would be subject to rules or regulations of the Department of Personnel requiring the payment of the prevailing rate of wages to those holding such a position or serving in such a capacity if that employment were subject to the 'Personnel Code', the State officer, agency or authority shall pay that individual at the prevailing rate, notwithstanding the nonapplicability of the 'Personnel Code'." Ill. Rev. Stat. 1977, ch. 127, par. 391.

The Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b101 *et seq.*) is a comprehensive statute dealing with personnel administration throughout State government. It is not contested that plaintiffs were exempt from its provisions at the time of filing suit by virtue of section 4c(9) which reads in part as follows (herein the Code):

"General exemptions. The following positions in State service shall be exempt * * *:

* * *

(9) All other employees * * * of the * * * University of Illinois * * * so long as these are subject to the provisions of 'An Act to create the State Universities Civil Service System', approved May 11, 1905." Ill. Rev. Stat. 1977, ch. 127, par. 63b104c(9).

It is likewise not contested that plaintiffs were subject to the

University Civil Service System (Ill. Rev. Stat. 1977, ch. 24½, par. 38b1 *et seq.*) (herein the System) at the time of filing suit. Under the System, the Merit Board, which administers it, is required to pay the prevailing rate of wages to any classification which was receiving it on January 1, 1952. As to other classifications, the Merit Board has discretion as to such payment. "Prevailing rate of wages" is defined in the statute as "the wages paid generally in the locality in which the work is being performed to employees engaged in work of a similar character." Ill. Rev. Stat. 1977, ch. 24½, par. 38b3(3).

Plaintiffs contend that when the Act, the Code, and the System are read together, there emerges a clear legislative intent that there be uniformity of wages among all State employees who perform the same function, whether under the Code or under another set of rules such as the System. Plaintiffs produced an opinion of the Attorney General of Illinois issued May 9, 1978 (Op. Att'y. Gen. S-1359 (1978)) which appears to bolster their position by concluding that the Act does apply to nonacademic university employees.

Defendants claim that if it be read literally, the Act repeals by implication the discretion given to the Merit Board to pay the prevailing rate after January 1, 1952, and that repeal by implication is not favored. They further claim that the opinion of the Attorney General is not well reasoned nor persuasive and that the University of Illinois is not a "State officer, agency or authority," these being the entities covered by the Act.

This being a case of first impression, the rule is that opinions of the Attorney General are entitled to great weight provided they are well reasoned and persuasive. (*City of Champaign v. Hill* (1961), 29 Ill. App. 2d 429, 173 N.E.2d 839; *City of Springfield v. Allphin* (1977), 50 Ill. App. 3d 44, 365 N.E.2d 249.) We do not so find opinion S-1359.

In at least two places in the opinion the Act is referred to as a "comprehensive scheme." The Act consists of 90 words and consumes 11½ lines in the State Bar Association Edition of the 1977 Statutes. It reposes between acts relating to wage deductions for the United Fund and to the Bureau of the Budget. Its generic connection with either is obscure.

In 1A Sutherland, Statutes and Statutory Construction §20.02 (4th ed. 1972), it is said:

"In original legislation of a comprehensive nature, the customary order of provisions is as follows:
Official Title
Preamble (if one is used)
Enacting Clause
Definition Section
Short Title
Policy Section (in lieu of Preamble)

Administrative Sections
Sections Prescribing Standards of Conduct
Exceptions, Provisos, and Saving Clauses
Sections Imposing Sanctions
Interpretation Clauses
Severability Clause
Temporary Provisions
Provisions Concerning Duration
Repealing Clauses."

By no stretch of the imagination does the Act fit with this definition, nor can it be compared with other comprehensive schemes which have been enacted by the legislature; for example, the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1—1 *et seq.*), the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 1—100 *et seq.*), both of which conform to the Sutherland format and demonstrate knowledge by the legislature of the character and requirements of a "comprehensive scheme."

Moreover, the opinion cites *People v. Barrett* (1943), 382 Ill. 321, 46 N.E.2d 951, as authority for the proposition that the University of Illinois is a State agency. We find such an interpretation of *Barrett* to be erroneous, as will be more fully explained later in this opinion.

■■ We are thus led to the conclusion that opinion S-1359 is neither well reasoned nor persuasive and that little weight may therefore be accorded to it. We are also led to the further conclusion that the Act, although couched in general language, is far from being a comprehensive scheme. It appears to seek a remedy for a particularized problem. Exactly what that problem is, or may be, is not immediately apparent.

The transcript of the legislative debates on the Act are before us as part of the record, and, while exhibiting considerable confusion as to the precise reason for the Act's being, there is some indication that it was aimed at the Illinois Toll Road Authority. However, we need not decide the question since we find other, more persuasive, reasons why the Act does not apply to the University of Illinois.

The first of these reasons is that the repeal of a statute by implication is not favored, and any construction of two or more statutes which might lead to this result is to be avoided. The doctrine was stated in *People v. Isaacs* (1967), 37 Ill. 2d 205, 225-26, 226 N.E.2d 38, 50:

"It is argued that the 'Act to revise the law in relation to State contracts' (Ill. Rev. Stat. 1963, chap. 127, par. 64 *et seq.*) has been impliedly repealed by the Illinois Purchasing Act (Ill. Rev. Stat. 1963, chap. 127, par. 132.1 *et seq.*) and that thus section 4, a part of the former act, no longer defines an offense.
    *  *  *
"It will be seen immediately that the Illinois Purchasing Act is

general in nature and is broad enough to encompass all purchases by State agencies, while the 'Act to revise the law in relation to State contracts' deals only with a limited subject matter, the manner of purchasing stationery, printing and paper for the State. We have previously held that 'where two statutes treat upon the same subject, the earlier being special and the later one general, unless they are irreconcilably inconsistent, the latest in date will not be held to have repealed the former, but the special act will prevail in its application to the subject matter coming within its particular provision. [Citations.]' [Citations.] Moreover, repeal by implication is not favored, and even if there is an apparent inconsistency between two laws, they will be construed, insofar as possible, so as to preclude an implied repeal of the earlier by the later. [Citations.]" Accord, *Ralston Purina Co. v. Killam* (1973), 10 Ill. App. 3d 397, 293 N.E.2d 750.

■■ By applying these principles to the instant case, it will be apparent that in order for plaintiffs to prevail, the Act, being later and general, must repeal *pro tanto* the System, which is earlier and specialized. This is precisely what the *Isaacs* court condemned. The System, as outlined above, makes specific provision for prevailing wage rates for those covered by it; the Act must therefore be intended for such groups as have to such specific provision. In this fashion both statutes, the Act and the System, may be read together in order to give effect to all provisions of each. *Ketcham v. Board of Education* (1927), 324 Ill. 314, 155 N.E. 332.

■ A second reason why the Act does not apply to the University of Illinois is our conviction that the university is not a State agency within the meaning of the Act, which by its own terms applies to "any State officer, agency or authority." At oral argument plaintiffs' counsel indicated that the entire case would stand or fall on this question.

Both plaintiffs and defendants rely on *People v. Barrett* (1943), 382 Ill. 321, 46 N.E.2d 951, in which the supreme court examined at length the nature of the University of Illinois. The opinion is exhaustive and learned and is concerned with some matters not material to the instant case. The court's ultimate conclusion was that the university is not a State agency but an agent for the State. The distinction, while subtle, is very real. A State agency is an element of government, clothed with, and exercising, governmental powers. Examples are the so-called "Code Departments" found in chapter 127 (Ill. Rev. Stat. 1977, ch. 127, par. 3). An agent for the State is an entity created by the State for a particular purpose but lacking any coercive governmental power. These are of a greater variety, extending across a broad spectrum of activities. At one end stand huge public corporations, like the University of Illinois (Ill. Rev. Stat. 1977, ch. 144, par. 22); at the other stand small advisory boards, like the Board of

Sponsors of Governor's Scholars (Ill. Rev. Stat. 1977, ch. 127, par. 63b131). Both State agencies and agents for the State are created by the legislature, but the former are governmental in nature while the latter are proprietary or administrative.

The *Barrett* court made this very clear in saying:

> "It is a public corporation, created for the specific purpose of the operation and administration of the university. As such, it may exercise all corporate powers necessary to perform the functions for which it was created." 382 Ill. 321, 342, 46 N.E.2d 951, 962.
>
> "It functions solely as an agency of the State for the purpose of the operation and administration of the university, for the State. In doing this, it functions as a corporation, separate and distinct from the State and as a public corporate entity with all the powers enumerated in the applicable statutes, or necessarily incident thereto. It has and can exercise no sovereign powers. It is no part of the State or State government." 382 Ill. 321, 343, 46 N.E.2d 951, 962.

Since we have determined that the Act does not apply to the System, it is unnecessary for us to consider the second issue raised by plaintiffs, *i.e.*, the class action, since under the pleadings both the individual actions (counts I and II) and the request for certification as a class action (counts III and IV) are based on the same questions of law and fact. Since the plaintiffs here have no cause of action, they could not "fairly and adequately protect the interest of the class." Ill. Rev. Stat. 1977, ch. 110, par. 57.2(3).

The decision of the circuit court of Champaign County was correct and it is affirmed.

Affirmed.

MILLS, P. J., and LEWIS, J., concur.