In re Michele DeANGELIS, Debtor.

Michele DeAngelis, Plaintiff,

v.

Frederick A. Laskey, Commissioner of Revenue, Department of Revenue, Commonwealth of Massachusetts, Defendant.

Bankruptcy No. 96–18315–CJK.
Adversary No. 99–1129.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 28, 1999.

James L. O'Connor, for Commonwealth.

Jeffrey J. Cymrot, Andover, MA, for Debtor.

### MEMORANDUM OF DECISION AND ORDER ON MOTION OF THE COMMONWEALTH OF MASSACHUSETTS TO DISMISS AMENDED COMPLAINT

CAROL J. KENNER, Bankruptcy Judge.

By her original complaint in this adversary proceeding, the Plaintiff and Debtor, Michele DeAngelis, sought a determination that her debt to the Commonwealth of Massachusetts for income taxes for tax years 1989 and 1990, in the original amounts of $2,900.85 and $17,295.06 respectively, are not excepted from the discharge she received in her case under Chapter 7 of the Bankruptcy Code. When the Commonwealth moved to dismiss the complaint on the basis of Eleventh Amendment immunity from suit in federal court, the Debtor amended her complaint. The amended complaint no longer names the Commonwealth as a defendant; instead, it names as defendant only Frederick A. Laskey, the Commissioner of Revenue for the Commonwealth. In the amended complaint, the Debtor demands the following relief: (1) as in the original, a determination that her debt to the Commonwealth for 1989 and 1990 income taxes is not excepted from discharge; (2) an injunction against future violation of the discharge; (3) an order to account for and return funds collected in violation of the discharge; and (4) compensation for the attorneys' fees incurred in bringing this action.

Now the Commonwealth has moved to dismiss the amended complaint, again on the basis that the Eleventh Amendment of the United States Constitution deprives federal courts of subject matter jurisdiction over suits against the Commonwealth by its own citizens. The Commonwealth maintains that, although it is not a named defendant, it remains a real party in interest and, as such, remains entitled to the full benefit of Eleventh Amendment immunity. The Commonwealth points out that it has not filed a proof of claim in this case and has not otherwise waived its Eleventh Amendment immunity; and the Commonwealth argues that the statutory abrogation of Eleventh Amendment immunity in 11 U.S.C. § 106(a) is ineffective because Congress's Article I powers—including the Bankruptcy Clause, the basis of Congress' authority for enacting the Bankruptcy Code—do not empower it to abrogate states' Eleventh Amendment immunity. Recognizing that the Plaintiff has amended her complaint to qualify for the exception to Eleventh Amendment immunity carved-out in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (Eleventh Amendment immunity does not bar suits against state officials to prospectively enjoin continuing violations of federal law), the Commonwealth also argues that amended complaint does not so qualify because (1) it is not truly a request for injunctive relief and does not allege a continuing violation of the discharge injunction, 11 U.S.C. § 524(a)(2), there being no injunction until the debt is determined to fall within the scope of the discharge; and (2) the *Ex parte Young* doctrine should not be construed to extend to matters involving special sovereignty interests, including the collection of taxes, the matter at issue here.

The Debtor opposes the motion. First, the Debtor relies on the abrogation of the states' Eleventh Amendment immunity in § 106(a) and maintains that it constitutes a valid exercise of Congressional authority. Second, the Debtor argues that even if the Commonwealth's immunity was not validly

abrogated, she may nonetheless maintain this action in federal court because it falls within the *Ex parte Young* exception. Moreover, citing *Strahan v. Coxe,* 127 F.3d 155, 166–167 (1st Cir.1997), she maintains that, though jurisdiction under *Young* is limited to complaints seeking prospective injunctive relief, "it does not place limits on the scope of the equitable relief that may be granted once appropriate jurisdiction is found." *Id.* at 167. Therefore, she contends, the Bankruptcy Court may entertain not only her requests for declaratory and injunctive relief, but also her requests for an order to account for and return funds collected in violation of the discharge and for the attorney's fees incurred in bringing this action.

#### a. Eleventh Amendment Immunity

■ The amended complaint does not name the Commonwealth as a defendant, but insofar as it demands a declaration that the taxes have been discharged and an injunction against further collection of such taxes, the real effect of the requested relief would fall on the Commonwealth, which would be prevented from collecting a tax debt.[1] The Debtor seeks this relief against Mr. Laskey, but only because he is charged with collecting taxes due the Commonwealth. The Debtor does not allege that Mr. Laskey himself holds against her. Therefore, on the requests for declaratory and injunctive relief, the Commonwealth remains a real party in interest, and the Court may exercise jurisdiction only to the

1. The Commonwealth is no longer a named defendant, so I do not read the amended complaint's demands for compensatory relief as demands against the Commonwealth.

2. In relevant part, § 106(a) provides:
   (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
   (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749,

extent permitted by the Eleventh Amendment.

■ The Eleventh Amendment creates an immunity to suit that acts as a limitation on the jurisdiction of the federal courts, albeit a limitation that can be waived. Among other things, the Amendment has been held to bar the exercise of federal jurisdiction over suits against a state by citizens of that state. This is such a suit, and the Commonwealth has not waived its immunity with respect to it. Accordingly, this Court may exercise jurisdiction over the suit only to the extent that either Congress has abrogated the Commonwealth's immunity or the suit falls under the doctrine of *Ex parte Young.*

#### b. Validity of Abrogation in Section 106(a)

■ Section 106(a) of the Bankruptcy Code purports to abrogate sovereign immunity with respect to the application of various sections of the Bankruptcy Code, including §§ 523 and 524—those at issue in this proceeding—to "governmental units," a defined term that includes the various states.[2] 11 U.S.C. §§ 106(a) (abrogation of sovereign immunity) and 101(27) (defining governmental entity). However, in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court held that Congress's Article I powers do not supply the authority necessary to abrogate 11th

764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
   (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
   (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages.

Amendment immunity.[3] Section 106(a) was enacted pursuant to one of Congress's Article I powers, the power granted in the Bankruptcy Clause to establish uniform laws on the subject of bankruptcies (U.S. CONST. Art. 1, § 8, cl. 4.), and therefore, on the basis of the holding in *Seminole,* its abrogation of the states' Eleventh Amendment immunity appears to be unconstitutional.

Some courts have held that the authority to abrogate sovereign immunity in § 106(a) was supplied by §§ 1 and 5 of the Fourteenth Amendment, and that § 106(a) of the Bankruptcy Code is a valid exercise of that authority.[4] However, the proposition that § 106(a) was enacted pursuant to the Fourteenth Amendment has not been widely accepted. The majority has held that neither § 106 in particular nor the Bankruptcy Code in general was enacted pursuant to the Fourteenth Amendment.[5] The reasoning of these courts is well-summarized in this excerpt from one of their decisions:

> There is no evidence that the 1994 Act was passed pursuant to the Fourteenth Amendment or any constitutional provision other than the bankruptcy power of Article I, § 8, cl. 4. See *Seminole Tribe,* 517 U.S. at 58–60, 116 S.Ct. at 1125 (noting that the Indian Gaming Regulatory Act was not passed pursuant to Congress' power under either the Fourteenth Amendment or the Interstate Commerce Clause; rather it was passed pursuant to the Indian Commerce Clause). Equally, there is no indication that Congress passed the 1994 Act to remedy any incipient breaches or even some unarticulated, general violation of the rights specified in § 1 of the Fourteenth Amendment. See *In re Tri–City Turf Club, Inc.,* 203 B.R. at 620 ("The court can find no hint that Congress had in its collective mind Fourteenth Amendment concerns when it enacted

**3.** In *Seminole,* the Seminole Tribe filed suit in federal court against Florida for failure to comply with the Indian Gaming Regulatory Act. In response, the State of Florida moved to dismiss because the bringing of the suit violated Florida's sovereign immunity. See *Seminole* at 1117–21. The Court held that "[t]he Eleventh Amendment prevents Congress from authorizing suits by Indian tribes against States to enforce legislation enacted pursuant to the Indian Commerce Clause." *Id.* at 1118.

**4.** *In re Headrick,* 203 B.R. 805, 809 (Bankr. S.D.Ga.1996) ("The privileges and immunities provided for under the uniform laws of bankruptcy applicable throughout the United States are incidences of federal citizenship against which, under the Fourteenth Amendment, no State may make or enforce any law abridging same.") *aff'd* on other grounds, 146 F.3d 1313; *Wyoming Department of Transportation v. Straight (In Re Straight),* 209 B.R. 540, 551 (D.Wyo.1997) ("Congress' exercise of its basic national legislative powers under any of the provisions of Article I will usually (if not invariably) implicate 'the privileges or immunities of citizens of the United States.' "), aff'd. on other grounds, 143 F.3d 1387. Those adopting this position point out that *Seminole* did not hold that Congress had no authority to abrogate sovereign immunity; rather, *Seminole* held only that no such authority was contained in Congress's Article I

powers. In fact, *Seminole* itself recognized that " § 5 of the Fourteenth Amendment allowed Congress to abrogate immunity from suit guaranteed by that Amendment." *Seminole Tribe of Florida v. Florida,* 116 S.Ct. at 1125.

**5.** *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237 (3rd Cir.1998) (the abrogation of sovereign immunity in § 106(a) is unconstitutional because bankruptcy is not a privilege of national citizenship within the meaning of the Fourteenth Amendment, and there is no evidence that Congress enacted § 106(a) pursuant to the Fourteenth Amendment); *In·re Creative Goldsmiths of Washington, D.C.,* 119 F.3d 1140 (4th Cir.1997) (section 106(a) is unconstitutional because there is no evidence that Congress enacted § 106(a) pursuant to the Fourteenth Amendment; the Fourteenth Amendment grants only a remedial power, not plenary substantive power; it cannot, consistently with *Seminole,* be defined so broadly as to justify every federal enforcement scheme as a requirement of due process); *In re Fernandez,* 123 F.3d 241 (5th Cir.1997) (same); and *In re Elias,* 218 B.R. 80, 86 (9th Cir. BAP 1997) (rights under the Bankruptcy Code are not constitutional privileges or immunities within the meaning of the Fourteenth Amendment).

Section 106(a) of the Bankruptcy Code."). To cede to Congress the power to pass general, substantive legislation which abrogates state sovereign immunity, pursuant to the Enforcement Clause, would render Eleventh Amendment state sovereign immunity meaningless.... See *City of Boerne v. Flores*, 521 U.S. 507, 519–25, 117 S.Ct. 2157, 2164–66, 138 L.Ed.2d 624 (1997); *In re NVR, L.P.*, 206 B.R. at 842 ("[T]his court can conceive of no ground which might warrant the 'discovery' of a bankruptcy privilege in the Fourteenth Amendment.").

*In re Fernandez*, 123 F.3d at 245. I agree with this position and therefore see no basis on which Congress could validly have abrogated the states' sovereign immunity as to the causes of action at issue in this proceeding. The abrogation of the Commonwealth's immunity in § 106(a) is unconstitutional and ineffective.

**c. *Ex parte Young***

■ Absent waiver or abrogation of the Commonwealth's Eleventh Amendment immunity, the Debtor can proceed on the requests that affect the Commonwealth only to the extent permitted by *Ex parte Young*. The *Young* doctrine carves out a "necessary exception" to Eleventh Amendment immunity to "ensure[ ] that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *P.R. Aqueduct & Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993). The doctrine is based on the theory (or legal fiction) that when a state officer violates federal law in the course of discharging his or her duties to the state, he or she is acting *ultra vires* and therefore not as the state or its agent. On this basis, *Young* held that the Eleventh Amendment does not apply to a suit against an officer of the state to enjoin the officer's continuing violation of federal law. But the *Young* exception is narrow. Under it, a federal court's jurisdiction is limited to requests for prospective declaratory

and injunctive relief. *P.R. Aqueduct & Sewer Authority v. Metcalf & Eddy*, 113 S.Ct. at 688; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997) (describing the *Young* exception as one for "certain suits seeking declaratory and injunctive relief against state officers in their individual capacities"); *Strahan v. Coxe*, 127 F.3d 155, 166 (1st Cir.1997) (the doctrine limits a federal court's jurisdiction to hear a case involving a state defendant to one in which a plaintiff brings suit against a state official, seeking only prospective injunctive relief to end a continuing violation of federal law). The court's jurisdiction does not extent to requests for retrospective or legal remedies, whether against the states or their officers. *P.R. Aqueduct & Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 113 S.Ct. 684 at 688, 121 L.Ed.2d 605; *Strahan v. Coxe*, 127 F.3d at 166. And *Young* does not permit judgments against state officers declaring that they violated federal law in the past. *P.R. Aqueduct & Sewer Authority v. Metcalf & Eddy*, 113 S.Ct. at 688.

■ The Commonwealth argues that the Supreme Court has further narrowed the applicability of *Young* by holding, in *Idaho v. Coeur d'Alene Tribe of Idaho*, *supra*, that *Young* does not apply where "special state sovereignty interests" are implicated. The Commonwealth contends that the matter at issue in this proceeding, the collection of taxes, is a special sovereignty interest to which *Young* would not apply. This Court disagrees with the Commonwealth's understanding of the Supreme Court's holding in *Coeur d'Alene*. The majority in that case held only that *Young* does not apply to every case where prospective declaratory and injunctive relief is sought against an officer in his or her individual capacity. But the five justices who constituted the majority did not agree among themselves as to why *Young* did not apply to the case before them. Only two justices joined in parts II–B, II–C, and II–D of the opinion, in which Jus-

tice Kennedy articulated and argued in favor of the "special sovereignty interest" limitation as a basis for concluding that *Young* did not apply in that case. Therefore, the "special sovereignty interest" limitation was not part of the holding in the case and is not binding precedent. Provided the relief is properly limited, I see nothing in the subject matter of this adversary proceeding that would remove it from *Young*'s proper ambit.

Next the Commonwealth argues that the Debtor's complaint does not truly allege a continuing violation of federal law because, the Commonwealth contends, until a tax debt .is determined to be discharged, the permanent injunction of 11 U.S.C. § 524(a)(2) (the discharge injunction) does not apply to it. I believe this misstates the law. In a Chapter 7 case, the discharge injunction applies, upon entry of the discharge, to all prebankruptcy debts except those enumerated in § 523(a). 11 U.S.C. § 727(b). A debtor need do nothing more to obtain the benefits of the discharge. As to debts in subsections (2), (4), (6), or (15) of § 523(a), the *creditor* must timely seek and obtain a determination that the debt is excepted from discharge in order *to except* it from discharge. But as to debts under all other subsections, including those allegedly subject to § 523(a)(1), the injunction applies (if it applies at all) from the date of discharge. The parties may disagree as to whether a particular debt was or was not excepted from discharge, but the adjudication they obtain on that issue does not change the character of the debt or (if the debt is not excepted from discharge) the date from which the discharge injunction applied to it. Therefore, the Debtor's complaint pleads a continuing violation of federal law. For these reasons, I hold that, insofar as the Debtor's complaint seeks declaratory and a prospective injunction against collection of the debt, the matter falls within the scope of *Young* and may be prosecuted against the Commonwealth in federal court.

The only matter remaining is to determine whether *Young* permits the Court to entertain the Debtor's related requests for relief. Citing *Strahan v. Coxe*, 127 F.3d 155, 166 (1st Cir.1997), the Debtor argues that, if the complaint seeks prospective injunctive relief, the Court has jurisdiction to grant any related equitable relief it may deem appropriate. The Debtor appears to be arguing that, by seeking prospective relief in the nature of an injunction against future violation of the discharge, he can establish jurisdiction to obtain legal and retroactive relief in the form of (1) an equitable order to return funds collected in violation of the discharge and (2) compensation for attorney's fees incurred in bringing this complaint.

The Court disagrees. In *Strahan v. Coxe*, the Court of Appeals stated that *Ex parte Young* "does not place limits on the scope of the equitable relief that may be granted once appropriate jurisdiction is found." *Strahan v. Coxe*, 127 F.3d at 167. But this should not be construed as a holding that a federal court can award retroactive relief in a *Young* suit. *Strahan v. Coxe* involved only a challenge to the kind of prospective injunctive relief that the court had entered: the court had awarded one form of prospective injunction, but the appellant argued that *Young* permitted only another form. The First Circuit very clearly held that, under *Young*, "a federal court lacks *jurisdiction* to hear a case in which the plaintiff seeks retrospective and/or legal remedies." *Id.* (emphasis in original). Therefore, this Court lacks jurisdiction to entertain the Debtor's requests for compensatory relief.

## ORDER

For the reasons set forth above, the Commonwealth's motion to dismiss is allowed insofar as the Debtor's complaint seeks an order requiring the Commonwealth to account for and return the funds that the Commonwealth has already collected and an award of attorney's fees, but the motion to dismiss is denied insofar as

the complaint demands (1) a determination that her debt to the Commonwealth for 1989 and 1990 income taxes is not excepted from discharge and (2) an injunction against future violation of the discharge.